SERAFÍN RODRÍGUEZ OCASIO, Plaintiff and Appellee, *v.* THE PEOPLE OF PUERTO RICO, Defendant and Appellant.

No. 10922. Argued July 7, 1953.—Decided September 25, 1953.

*José Trías Monge, Attorney General,* (*J. B. Fernández Badillo, Acting Attorney General,* on the brief) and *A. Torres Braschi, Assistant Attorney General,* for appellant. *Rafael Hernández Matos* for appellee.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

This is a suit for damages brought by Serafín Rodríguez Ocasio against the People of Puerto Rico, now the Commonwealth of Puerto Rico, alleging that a police officer unlawfully fired several shots at plaintiff, wounding him on both thighs. The Superior Court of Puerto Rico, Ponce Section, rendered judgment for plaintiff ordering defendant to pay $12,000 in damages. The Commonwealth of Puerto Rico appealed assigning several errors.

The first assignment reads:

"1. The lower court erred in overruling the Motion to Dismiss and in deciding that pursuant to Act No. 412 of May 11, 1951 (Sess. Laws, p. 1096), the Commonwealth of Puerto Rico had assumed responsibility for the damages suffered by plaintiff-appellee as a result of the alleged negligence of the Insular Policeman Francisco A. García."

Section 1802 of our Civil Code provides that a person who by an act or omission causes damage to another, when there is fault or negligence, shall be obliged to repair the damage so done. Section 1803 provides in part as follows:

"Section 1803.—The obligation imposed by the preceding section is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible.

".     .     .     .     .     .     .

"The State is liable in this sense when it acts through a special agent, but not when the damage should have been caused by the official to whom properly it pertained to do the act performed, in which case the provisions of the preceding section shall be applicable."

The above provision, insofar as it exempts the present Commonwealth of Puerto Rico from liability, since it does not act through a special agent, is not applicable to the case at bar by virtue of the provisions of Act No. 412 of May 11, 1951, which regulates and specifically refers to the situation involved here, and which provides:

"Section 1.—Serafín Rodríguez Ocasio, a resident of Coamo, Puerto Rico, is hereby authorized to sue The People of Puerto Rico for alleged damages suffered by him in an accident occurred in Coamo, Puerto Rico, while he was being pursued by insular policeman Francisco A. García on May 6, 1941.

"Section 2.—Serafín Rodríguez Ocasio is hereby relieved from the posting of bond to file said complaint *and he is further dispensed* from the provision relative to prescription, for which purpose the time elapsed shall not be counted *and he is authorized to file such complaint irrespective of whether of not The People of Puerto Rico was acting through a special agent at the time the said accident occurred.*" (Italics ours.)

Appellant alleges that although under this Act a claim may be filed independently of whether or not the People of Puerto Rico has acted through a special agent, it does not specifically exclude this case from the provisions of § 1803, to the effect that the People of Puerto Rico is not liable "when the damage should have been caused by the official to whom properly it pertained to do the act performed," in which case only the official shall be held personally liable. But when § 1803 speaks of the "official to whom it properly pertained to do the act performed," it means the official who

is not a special agent. Act No. 412 of May 11, 1951 eliminates, with respect to this case, the requirement that the policeman in question must be a special agent, and, therefore, it eliminates, as to the liability of the Commonwealth of Puerto Rico, the condition that the policeman must be an official to whom it properly pertained to do the act performed. Act No. 412 of 1951 operates as a legislative exception to the paragraph of the above-copied § 1803. It tends to eliminate the notion of class or category of agency involved in this case and renders applicable to this suit the general principles of master and servant or agency, as if the Commonwealth of Puerto Rico were a private employer, responsible for the act of its agents within the limits or sphere of action of their agency or employment.

The cases of *Campis* v. *People*, 67 P.R.R. 366; *Acevedo* v. *People*, 69 P.R.R. 402 and *M. Grau e Hijos* v. *People*, 51 P.R.R. 12, are not applicable to the case at bar. There it was held that the special statutes involved in those cases did not authorize the filing of suits against the People of Puerto Rico, since those statutes contained no saving clause as to the liability of the People of Puerto Rico, even if it had not acted through a special agent. The exception was specifically established in Act No. 412 of 1951, on which the claim in this case was based.

▇▇▇▇ The second and third errors assigned by appellant are the following:

"2. The lower court erred in concluding, as a question of law, that policeman Francisco A. García by employing unjustified and unnecessary violence in order to carry out the arrest of plaintiff-appellee, was at all times complying with the specific orders of his immediate superior, within the scope of his employment in enforcing the provisions of the Beverages Act and while in the discharge of his duties, and it likewise erred in holding that defendant-appellant is liable for the tortious act of this policeman and for the damages caused to plaintiff-appellee. (Conclusions of Law, paragraph 3.)

"3. The lower court erred in concluding, as a matter of fact, that the plaintiff-appellee did not offer any resistance or violence against the policeman Francisco A. García, and that his conduct at no time led to contributory negligence or impelled the agent to wound him in order to effect his arrest. (Findings of fact, paragraph 10.)"

Essentially, under the third error assigned, appellant Commonwealth of Puerto Rico alleges that the trial court erred in weighing the evidence, and, as to the second assignment, it alleges that even assuming that the evidence was correctly weighed and that the findings of fact set forth by the trial court were valid, the latter committed error of law in deciding that the Commonwealth of Puerto Rico was and is liable to plaintiff since, according to appellant, the findings of fact show that policeman Francisco A. García went beyond the scope of his employment and agency as an official or employee of the Commonwealth of Puerto Rico when he fired at plaintiff.

The findings of fact set forth by the trial court were, in part, as follows:

"1. On May 6, 1941, Francisco A. García and Francisco Cruz Pagán were members of the Insular Police rendering services as such in the municipality of Coamo, Puerto Rico, under the orders of their immediate superior, Luis A. Ramos.

"2. On that day his superior *entrusted them with the special mission of pursuing and arresting Serafín Rodríguez Ocasio*, of Santa Catalina ward of Coamo, who, according to information received by the police, was operating a clandestine still in that ward, thereby violating the Beverages Act.

"3. In the execution of those specific and superior orders, Francisco A. García and a fellow-policeman dressed as civilians early in the morning of May 6, 1941 and went to Santa Catalina ward; upon arriving at the place known as Culantros, they saw a column of smoke rising from among some trees covering a pit. They went towards there and caught Serafín Rodríguez Ocasio stirring the fire under the still; when he saw them he took flight to avoid his arrest and, as he fled, Francisco A García fired two shots at him, piercing both his thighs, which caused

Rodríguez Ocasio to fall to the ground whereupon he was taken by both policeman to Dr. Talavera's Clinic in Coamo for medical attention.

"4. From May 6, 1941 until July 30 of that same year Serafín Rodríguez Ocasio was hospitalized, under medical treatment at the clinic of Dr. Talavera in Coamo; there he underwent treatment painful in itself; the impact of one of the bullets produced a fracture of the middle third of the femur in the left thigh, with marked displacements of both fragments; under anesthesia a reduction of the fracture was made and the fragments maintained in correct position for a long time with cast and traction; during this time there was no union of the fracture and the inferior fragment became displaced from its proper position resulting in shortening of the leg. The other bullet injured the right thigh without causing fracture and the bullet remained in the thigh. The entrance wounds of both bullets were located in the posterior part of each thigh.

"5. By the end of July, 1941 he was transferred to the Municipal Hospital of Coamo, where he received treatment under the medical direction of Dr. Talavera, Director of the hospital, until February 11, 1942, when he was taken to the District Hospital of Ponce, where he remained until May 2; there he underwent several surgical operations performed by Dr. Serra, who opened the bone of the left thigh and inserted a vitalium plate with screws. From May 2, 1942 until January 29, 1943 Serafín remained at his sister's house at Santa Catalina ward; on this last date he went again to the District Hospital of Ponce, where once more Dr. Serra attended him, but his left femur was not united; on this second occasion he remained at the District Hospital until April 5, 1943, when he again went to his sister's house until June, 1949, when he finally went to San Lucas Hospital of Ponce, to receive treatment on his left leg for a period of three weeks, after which he went to live with his sister.

"6. Notwithstanding the efforts of the physicians who took care of him, the left knee became ankylosed, permanently stiff, and pseudo-arthrosis or artificial articulation was produced; the left ankle also became ankylosed and the left leg became shorter by about three inches. Since May 6, 1941 the plaintiff has been, and shall be for the rest of his natural life, incapacitated for work requiring the use of his legs; he has suffered long and painful treatments, mental anguish and physical and moral

torments. On May 6, 1941 he was a young, healthy and strong man, engaged in agriculture and took care of several relatives who depended on him for support.

". . . . .

"9. On June 16, 1942 the district attorney filed an information for mayhem against the policeman Francisco A. García, charging him with having fired two shots at Serafín Rodríguez Ocasio, permanently injuring his left leg. At a trial by jury he was found guilty of mayhem, and sentenced to an indeterminate sentence of from one to three months imprisonment in the penitentiary.

"10. Policeman Francisco A. García fired the two shots at Rodríguez Otero at a time when the latter had his back turned to the police, and was escaping to avoid his arrest, and while the policeman was complying with specific superior orders to pursue him, as he actually did, for a violation of the Beverages Act, without Rodríguez Ocasio showing any resistance or violence; before the shots the policeman had not yet arrested Rodríguez Ocasio; they effected his arrest after wounding him. Serafín Rodríguez Otero's conduct in no way amounted to contributory negligence nor did it provoke the policeman to wound him to secure his arrest or detention."

As we have stated, under the third assignment appellant alleges that the trial court committed error in weighing the evidence and in failing to conclude that the plaintiff employed force or violence in unduly resisting the arrest practiced by policeman García. As we have already seen, the trial court concluded that policeman García caught plaintiff operating a still; and that when he tried to arrest him plaintiff fled and without plaintiff showing force, violence or resistance of any kind, the policeman fired while plaintiff ran with his back to the police. We have studied carefully the transcript of the evidence and we have arrived at the conclusion that it has not been proved that the Ponce court committed any error in weighing the evidence. Hence, the third assignment of error is untenable. Its findings of fact must be upheld. The appellant alleges that even accepting those findings, policeman García acted beyond the limits of his agency and the power

conferred on him, wherefore the Commonwealth of Puerto Rico is not liable. Let us see.

Policeman García's act in firing at plaintiff was criminal and unwarranted. He exercised excessive force and violence.[1] But the fact in itself that an agent has acted criminally and has exercised excessive and unnecessary force or violence, does not relieve the employer from liability for damages nor does it imply in itself that the agent has acted beyond the course and scope of his employment. *Maysonet v. Heirs of Arcelay*, 70 P.R.R. 155, 159 *et seq; Suárez* v. *Saavedra*, 52 P.R.R. 662, 668, 669, 60 P.R.R. 589; *cf. Díaz v. San Juan Light & Transit Co.*, 17 P.R.R. 64. The liability of a principal to compensate for damages caused by the acts of an agent is predicated precisely on the fault or negligence of the agent. By definition, the fault or negligence of an agent, creating the principal's liability, entails the unwarranted performance of an act contrary to legal standards. Without excessive force, there would never be any liability. Excess implies culpability. Naturally, under specific circumstances, the excessive or unnecessary criminal act may be a relevant factor to prove whether or not the agent acted within the scope of his functions. But it is not the sole and controlling factor. If the crime or use of excessive force is incidental to the protection of the principal's interests and not for motives which are wholly personal to the agent, the

---

[1] A policeman who in arresting a person guilty of a misdemeanor fires at the person while the latter is trying to escape without showing resistance to the police, acts unduly and exercises excessive force or violence. In *People* v. *Colón*, 65 P.R.R. 714, 721, it is held that when persons who commit a misdemeanor in the presence of a policeman make no use of violence in order to avoid their arrest but merely flee, the policeman is not justified in firing a shot even if it is into the air, in order to frighten them; his act in so firing and wounding a third person is unlawful.

Since this is a case of a misdemeanor, even if the arrest is valid, a policeman is not authorized to fire at the arrested person, even if the latter is trying to escape so long as there is no show of resistance. Restatement of the Law on Torts, Vol. 1, pp. 300–305, § 131; Prosser on Torts, p. 164; *Paramore* v. *State*, 129 S.E. 772, 776; *Wright* v. *State*, 199 Indiana 617.

principal is then held liable. *Maysonet* v. *Heirs of Arcelay*, *supra*. It could be argued that a criminal act oversteps the limits of the furtherance of the employer's business. But this argument faces the fact that there may be wrongful acts implying fault or negligence which might give rise to liability. If the criminal act is logically connected with the business of the agent, then, even if the force used is excessive, the agent would not be overstepping the limits of his agency. If the use of such means is a relevant consequence of the performance of the agent's functions, the latter would then be protecting the interests of his principal. A wrongful act does not entail, *per se*, liability. But if there is a logical nexus, of necessary occasion, between the employment and the wrongful act, that is, if the criminal act has been made possible or probable, or, at least, easier, because of the nature of the employment, then the principal is held responsible. Giorgi, *op. cit.*, p. 478. Hence we are concerned with a logical relation between the functions of the agent and his unusual act. We are concerned with a criterion of logical relevance and not with the lawfulness of the pertinent relation with the basic purposes of the principal and not with the magnitude of the force used. Assuming the financial irresponsibility of the agent, the question ultimately is who should suffer, logically and in due justice, the risk and burden of the damages, whether the victim or the principal, when the agent's motive was to protect his principal's interests.

██ We are not overlooking the fact that in this field of law the differences in concepts may be subtle and of difficult application in practice. It is rather a question of degree whose solution depends on diverse factors, such as the seriousness of the act done, the motives of the agent, the immediate occasion of the act and the nature of the relation between the wrongful act and the agent's mission. As to the specific circumstances in the case at bar, policeman García was lawfully acting within the scope of his duties in arresting the plaintiff. His act in shooting at the plaintiff was

criminal, unusual and excessive, but it was logically related to his mission. That mission was the necessary condition or occasion for the shots fired. He did not base his act on any personal motive but rather he might have understood, objectively, that he was protecting the public interest of the community, that is, of his principal, the Commonwealth of Puerto Rico. Therefore, the trial court acted correctly in holding defendant liable.

The cases of *Marrero* v. *López et al*, 15 P.R.R. 746; *Martínez* v. *Trujillo & Mercado*, 24 P.R.R. 271, and *Torres* v. *J. Lema & Co.*, 36 P.R.R. 72, where the employer was exempted from liability, are not applicable to the case at bar. In *Marrero* v. *López et al.*, an overseer asked a boy for a drink of water, and when the latter declined, the overseer struck him and as he tried to run away the overseer shot him. The reasons of the employee were personal and he did not act in defense of his employer's interest. In *Martínez* v. *Trujillo & Mercado*, an overseer while surrounded by a group of laborers, tried to show how he would shoot at an offender and a shot went off killing one of the laborers. It was held that the employer was not liable because said demonstration was not part of the duties of the overseer. In *Torres* v. *J. Lema & Co.*, a policeman went to a store and spoke harshly to two clerks because they were selling after closing hours. Another clerk assaulted the policeman with an iron bar. His act had no objective relation nor logical connection with the protection of the interests of the employer.

We have examined the cases cited by the appellant. In the majority of those cases it is held that a municipal corporation is not responsible for the acts of a policeman, since the latter performs a governmental function and the municipality does not act as a corporation. Since it was considered subtle, artificial and conceptual, the distinction between governmental and corporate functions has been eliminated by this Court, and it no longer has any meaning in Puerto Rico. *Serra* v. *Transportation Authority*, 67 P.R.R. 574.

In other cases cited by the appellant it is stated that governmental liability is automatically excluded by the fact that the policeman used excessive force. We do not agree. Excess does not relieve from responsibility but defines it when it is based on the furtherance of the employer's business. We prefer the rule laid down, for example, in the cases of *Nelson* v. *American–West African Line*, 86 F. 2d 730 and *White* v. *Pacific Tel. & Tel. Co.*, 24 Fed. Supp. 871, 876. In the first case cited, Justice Learned Hand stated the following:

"... A principal is not chargeable with willful acts, intended by the agent only to further his own interest, not done for the principal at all. ... But motives may be mixed; men may vent their spleen upon others and yet mean to further their master's business; that meaning, that intention is the test."

In the *White* case the Chief of the Police of a private enterprise wounded an employee, excessively, when he tried to obtain a confession from the employee that he had stolen from the employer. It was held that the corporation was responsible, since the private policeman was defending the interests of his employer.

■ Under the fourth assignment the appellant alleges that the $12,000 compensation granted by the trial court is excessive. In its findings of fact the court determined that the bullet had brought about the fracture of the middle third of the femur in plaintiff's left thigh, the leg becoming shorter and useless, and another bullet penetrated his right thigh; that he suffered several operations and was submitted to a painful medical treatment for an approximate period of ten years during which he could not walk; that his left knee and toe have become ankylosed, and that "Since May 6, 1941 the plaintiff has been, and shall be for the rest of his natural life, incapacitated for work requiring the use of his legs," and that "On May 6, 1941 he was a young, healthy and strong man, engaged in agriculture and took care of several relatives who depended on him for support." These findings are sup-

ported by the evidence, and in view of the attendant circumstances, we do not believe that the compensation granted is excessive.

The judgment appealed from will be affirmed.

Mr. Justice Marrero did not participate herein.